# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| GLENN HAYES, | ) |
| Plaintiff, | ) |
| v. | ) |
| OSCAR WILLIAM LOYD II | ) Case No. Click to type |
| Defendants. | ) JURY TRIAL DEMANDED |

**ORIGINAL COMPLAINT**

1.     Glenn Hayes was arrested in Smith County for one count of felony drug possession in Texas, after which O.W. Loyd II ("Loyd") was appointed to represent him. Instead of representing Hayes in the criminal case, Loyd did nothing – he did not visit Hayes in jail, prepare a defense, or file any motions whatsoever. After 90 days Hayes was unquestionably entitled to release under state law, but he remained in jail due to his lawyer's inadequate representation. Hayes spent a total of 115 days in jail, 23 of which were clearly unlawful. Those 23 days of unlawful incarceration included the dates of Winter Storm Uri, during which the Smith County Jail was without electricity, heat, and water for multiple days.

2.     Eventually, community advocates paid Hayes' bail and secured new criminal defense counsel for Hayes. That new counsel secured a dismissal in that matter.

3.     Hayes sues his former court-appointed attorney for professional malpractice because any reasonable attorney would have communicated with Hayes and done basic work on the case. At the absolute minimum any reasonable attorney would have secured Hayes' release on the 91st day after he was arrested, in accordance with state law.

## Parties

4.     Plaintiff Glenn Hayes was represented by Oscar William Loyd II in a criminal case in Smith County, Texas. Hayes lives in Monroe, Louisiana, where he works at a pizza shop and lives with family.

5.     Defendant Oscar William Loyd II is a licensed attorney whose primary place of business is in Tyler, Texas. Loyd was appointed to represent Hayes in a

1

criminal case that resulted in Hayes' extensive pre-trial incarceration, including for a period that was clearly unlawful.

## Jurisdiction and Venue

6. Hayes brings this Action as a professional malpractice claim, which is a species of common-law negligence. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.

7. Venue is proper in this District and Division because all events complained of occurred in this District and Division.

## Hayes received court-appointed criminal defense counsel in Smith County who provided objectively inadequate representation to Hayes

8. Hayes was in the back seat of a vehicle that was pulled over in Smith County, Texas on or about November 4, 2020 for driving in the left lane. Texas Department of Public Safety officers searched the car and passengers, and found less than one gram of suspected contraband inside a box inside a closed suitcase inside the trunk.

9. As a result, Hayes was arrested for allegedly possessing less than one gram of a marijuana derivative, which is a felony under state law.

10. He was 20 years old and had no prior felony convictions.

11. Hayes was not able to pay $1,500 bail to buy his freedom, so he remained in custody in the Smith County Jail for months.

12. Hayes submitted a "Pauper's Oath Application" requesting court-appointed criminal defense counsel on November 22, 2020. He had no income or assets at that time.

13. On December 29, 2020, O.W. Loyd was appointed to represent Hayes in his felony case in Smith County.[1]

14. Hayes was still incarcerated in the Smith County Jail at the time Loyd was appointed to represent him.

15. Loyd never contacted Hayes – whether in person, via mail, over the phone, or otherwise.

16. Despite being appointed to represent Hayes for his felony arrest, Loyd has never communicated with Hayes in any way.

17. Hayes remained in jail for 60 days after Loyd was appointed to represent him without hearing anything from his lawyer and, on information and belief, without his attorney filing anything in his case.

18. By February 4, 2021, Hayes was entitled to release under Texas Code of Criminal Procedure article 17.151 because he had not been formally charged with a crime,[2] but he remained illegally detained in jail because his lawyer did nothing to secure his release.

---

[1] It is not clear why it took more than a month for the Court to appoint counsel to represent Hayes, given that state law requires that applications be ruled on within 3 working days. Tex. Code Crim. P. art. 1.051.

[2] Article 17.151 states that a person accused of a felony is entitled to release if the State is not ready for trial within 90 days. Texas courts have consistently found that, because an indictment is necessary to prevail at trial, if the State has not indicted a person within the

19. During his time in custody, Hayes wrote at least one letter to Loyd at his office trying to get help with his case, but Loyd never responded.

20. Hayes attempted to call Loyd several times from jail but Loyd never answered.

21. Hayes had never been arrested in Texas prior to this arrest. He did not know anything about the criminal legal system in Smith County or in Texas when he got arrested.

22. Without money or legal experience, Hayes was entirely reliant on his court-appointed attorney to help him navigate the case, but Loyd did nothing.

**With assistance from nonprofit entities, Hayes gets out of jail and his case is dismissed**

23. On or about February 27, 2021, the nonprofit Texas Jail Project paid Hayes' bail so that he could be released from custody.

24. Hayes had never heard of the Texas Jail Project before this and, because he had no money, did not expect to ever make bail in this case until Texas Jail Project found him, scheduled a video visit with him, and agreed to pay his bail at no cost to Hayes.

25. On April 14, 2021, the nonprofit Texas Fair Defense Project enrolled as counsel to represent Hayes in his criminal case, *pro bono*.

---

17.151 period then as a matter of law the State is not ready for trial and the person is entitled to relief.

26. Hayes was never indicted in this matter, nor was he formally charged with any other offenses related to this arrest.

27. The alleged drugs for which Hayes was arrested were never tested, and the State never established that the substance actually contained illegal drugs.

28. The Smith County District Attorney's Office entered a dismissal on October 5, 2021.

29. Hayes was never convicted of any offense related to his arrest.

**Hayes experienced significant injury from Loyd's professional malpractice**

30. By February 4, 2021, Hayes was entitled to be released from custody because he had not yet been indicted for the offense for which he was arrested.

31. However, Hayes was not released because his lawyer did not file a motion or a habeas writ seeking to secure his release.

32. Instead, Hayes remained unlawfully jailed for 23 days.

33. While he was in custody, Hayes missed his family and friends and felt distress from being separated from them. He has no family in Texas or who could afford to travel there from Louisiana, so no one visited him during the entire time he was in custody.

34. Hayes was only able to talk to his family when he got free calls from the jail, which generally happened on Sundays. They mostly talked about how they couldn't wait for him to come home and their plans for the future, which mostly involved them being together and Hayes getting back to work.

5

35. No one in Hayes' family had experience being arrested in Texas so they also had no idea what to expect about when he might be released or what might happen with his case.

36. Hayes had no money on his commissary and so he was only able to supplement his meager diet and toiletries in jail based on the generosity of other people in custody.

37. It was difficult and stressful for Hayes being under control by the guards. For example, Hayes had to eat on their schedule or be hungry – which is particularly hard because meals were generally provided at 3am, 10am, and 3pm. Because Hayes had no money for commissary, he had nothing to eat from 3pm until 3am most days.

38. Hayes was worried about what would happen to him in jail, especially because he had friends who have died in jail elsewhere because they didn't get adequate medical care.

39. Jail was difficult mentally for Hayes because of the stress and the lack of freedom – he saw other people lose their sanity while he was in jail.

40. Hayes did not know what was going to happen with his case and so he was afraid that he could spend as much as two years in jail. He didn't know when anyone would come talk to him about his case.

41. Hayes tried to research his case himself using a kiosk in the jail, but it was hard to find useful information. He heard from others in jail that the drug testing

labs were backed up and that could cause delays for his case, but he could not reach his lawyer to ask for more information.

42. While Hayes was being illegally detained due to his attorney's negligence, Winter Storm Uri hit Texas, bringing below-zero temperatures and power outages.

43. Being in jail is always miserable. Being in jail during a winter storm without power is particularly so.

44. The jail lost power and water during the storm, and all Hayes was given to brace against the cold was one additional blanket.

45. During the winter storm Hayes suffered from extreme cold, was given the same food for several days, with very dim lighting provided by the sun (or moon). When there was enough light, Hayes could see his breath inside the jail. He suffered, not knowing when power would be restored.

46. Shortly before he met the Texas Jail Project and learned that they would pay his bail, Hayes was told that he was being transported to a different facility near Houston, but the vehicle turned around and brought him back after they had gone part of the way there. This incident compounded Hayes' confusion, making him feel like his situation kept changing with no rhyme or reason, and without anyone to explain what was happening to him. He felt lost, unsure about how he was supposed to get home whenever he eventually got released from jail because he did not know where in the state he would be released and he had no transportation.

47. Hayes had no money upon his arrest or while he was in jail, At the time of his arrest, Hayes was heading home to Louisiana where he was expecting to get a job at a pizza shop where his brother worked. He had already talked to the manager there and was set to come in for an interview the day after his arrest.

48. When Hayes was finally released from jail, he returned to Louisiana and secured a job within a week. He currently makes $13.50 per hour, and gets paid between $700 and $900 every 2 weeks after taxes.

### **Claims for Relief**

#### *Count One*: **Malpractice against O.W. Loyd**

49. Hayes incorporates all prior and subsequent paragraphs here.

*A. Loyd owed a duty of care to represent Hayes as a reasonable lawyer would.*

50. Loyd owed Hayes a duty of care to act as a reasonable lawyer would when representing a client. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989).

51. A lawyer who accepts a court appointment is required by law and by professional ethics to represent court-appointed clients with the same zeal and effort as privately-retained clients. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 435 (1988) ("It is therefore settled law that an indigent defendant has the same

right to effective representation by an active advocate as a defendant who can afford to retain counsel of his or her choice.").[3]

52. This means that Loyd owed Hayes the same duty as any lawyer owes any client.

53. This duty of care encompasses an attorney's duty to represent their client competently and diligently.

54. Competence involves having the skill and knowledge necessary to adequately represent a client.

55. Diligence includes communicating with the client, investigating the case, filing reasonably necessary motions, communicating with opposing counsel about potential resolutions of the case, and developing a litigation strategy regarding the case. It also means not neglecting a case or a client.

56. The Sixth Amendment gives further contours to the duty Loyd owed Hayes. It requires that any criminal defense lawyer, appointed or otherwise, provide

---

[3] *See also Polk Cnty v. Dodson*, 454 U.S. 312, 321 (1981) (noting that court-appointed lawyers are "[h]eld to the same standards of competence and integrity as a private lawyer" because they "work[] under canons of professional responsibility that mandate [their] exercise of independent judgment on behalf of the client."); Texas Disciplinary Rules of Professional Conduct, Rule 6.01, Comment 2 ("An appointed lawyer has the same obligations to the client as retained counsel, including the obligations of loyalty and confidentiality, and is subject to the same limitations on the client-lawyer relationship, such as the obligation to refrain from assisting the client in violation of the Rules."); Robert P. Schuwerk and Lillian B. Hardwick, *Rule 6.01 Accepting appointments by a tribunal*, 48A Tex. Prac., Tex. Lawyer & Jud. Ethics § 11:1 (2021 ed.) ("While judicial appointments can thrust a lawyer into unfamiliar areas, the professional obligations of court-appointed counsel to their clients and to the court are no less stringent than those of privately retained counsel. Ordinary standards of competence and diligence remain as expectations and requirements and a lawyer is subject to both disciplinary sanctions and malpractice liability for failing to achieve them.").

9

reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).

57. State law requires a court-appointed criminal defense attorney to contact his client within one working day of receiving the appointment and to interview his client "as soon as is practicable[.]" Tex. Code Crim. P. art. 26.04(j)(1).

58. Prevailing professional standards in Texas provide that a criminal defense lawyer must arrange for a timely interview with their client, perform investigations, maintain regular contact with the client, pursue discovery, advise their client of their rights, and to study the facts and case before advising whether to accept a plea offer. State Bar of Texas, Performance Guidelines for Non-Capital Criminal Defense Representation, 74 Tex. Bar Journal 616 (July 2011).

59. Those same guidelines establish that "[w]hen appropriate, counsel has an obligation to attempt to secure the prompt pretrial release of the client under the conditions most favorable to the client." *Id* at 621.

60. They also provide that, among other tasks, a criminal defense lawyer should promptly comply with a client's correspondence and reasonable requests for information and consider developing bond reduction motions, pretrial motions, and a defense theory for use at trial. *Id* at 616.

61. The attorney's duty to communicate with the client includes the duty to confidentially communicate with their client. AMERICAN BAR ASSOCIATION CRIMINAL JUSTICE STANDARDS FOR THE DEFENSE FUNCTION 4-3.1(e) (2017).

*B. Loyd breached his duty to Hayes.*

62. Loyd breached his duty to provide reasonable representation to Hayes by completely failing to communicate with him about his case, failing to file any motions in his matter, and by making no effort to get Hayes out of jail while his charge was pending even after he was entitled to mandatory release from custody.

63. Had Loyd made any effort at all, Hayes would at least have been free on February 4, 2021 because he had not been charged with a crime and the State was therefore not ready for trial within 90 days, which entitled Hayes to release. Tex. Code Crim. P. art. 17.151.

64. Instead, Hayes remained in jail without any information about what was going on.

65. Hayes was in jail for 60 days after Loyd was assigned to represent him.

66. During that period, Loyd did not visit Hayes in jail a single time.

67. Nor did Loyd communicate with Hayes in any other way.

68. Loyd did not meaningfully consider developing bond reduction motions designed to lower the $1,500 amount that was unaffordable for Hayes, nor pretrial motions, nor a defense theory for use at trial.

69. On information and belief, Loyd did no work on Hayes's case, and had no communications with Hayes, in 60 days of being appointed to represent him.

70. Loyd was not diligent in representing Hayes and did not provide reasonably effective assistance of counsel to him.

71. No reasonable and competent lawyer would have performed as little work in a criminal case as Loyd performed in Hayes's case.

72. No reasonable and competent lawyer would have communicated as little with an incarcerated client in a criminal case as Loyd did with Hayes throughout his case.

*C. Loyd's breach of duty was the proximate cause of Hayes's harm.*

73. Hayes sat in jail for 115 days, 60 of which were after Loyd was appointed to represent him, without any communication with his court-appointed lawyer.

74. Loyd did no work on Hayes's case during that entire time.

75. It is nobody's fault but Loyd's that he refused to do any work on Hayes's case or communicate with him.

76. Hayes does not claim Loyd's malpractice is responsible for his initial arrest. However, Loyd's failure to provide even a modicum of representation to Hayes following his appointment to represent Hayes resulted in prolonged pretrial incarceration, including manifestly illegal pretrial detention, and significant mental distress not least from his sheer inability to communicate with his appointed legal representative about the charges he was facing.

77. Loyd's representation of Hayes fell far below what a reasonable criminal defense attorney would provide.

*D. Hayes suffered serious injury as a result of Loyd's malpractice.*

78. As a result of Loyd's deficient performance, Hayes remained in the Smith County Jail during a pandemic and through a once-in-a-generation winter storm. All the while Hayes remained without any information about what was happening with his case and without any work being done to effectuate his release or resolve the case against him.

79. Hayes made numerous attempts to communicate with Loyd from jail, to no avail.

80. Hayes sat in jail not knowing if anything was happening with his case at all. He did not know at the time whether he would be in custody for months or even years waiting for anybody to do anything with his charges. He felt forgotten and disposable.

81. After 90 days, on February 4, 2021, Hayes was entitled to immediate release from custody because he had not been charged with a crime and the State was therefore not ready for trial. Tex. Code Crim. P. art. 17.151.

82. Hayes was in jail while awaiting a resolution of his case for a total of 115 days, of which he spent 60 days represented by Loyd, and 23 both represented by Loyd and illegally detained.

83. While in custody, Hayes was confused and anxious, and felt abandoned. He suffered through Winter Storm Uri in jail unnecessarily.

84. Hayes was unable to work while in custody, despite having consistent work before and after his arrest.

85. Hayes currently earns $13.50 per hour, which is what he also could have been earning each day he was incarcerated awaiting anything to happen with his case.

86. If Loyd had acted as a reasonable attorney in the situation, Hayes would have been released at least 23 days earlier, and probably much sooner than that.

87. If Loyd had acted as a reasonable attorney in the situation, Hayes would have also suffered less throughout the duration of his case because he would have been apprised of his case's status and would know that he had an advocate working to support him, instead of wondering whether his lawyer would ever do anything and whether he would just sit in jail indefinitely.

## **Prayer for Relief**

Plaintiff Glenn Hayes respectfully requests:

- An award of compensatory damages against O.W. Loyd II for professional malpractice;
- An award of punitive damages against O.W. Loyd II for professional malpractice; and
- All other relief that this Court deems just and proper.

Respectfully submitted,

*/s/Nathan Fennell*
Nathan Fennell
Texas Fair Defense Project
314 E Highland Mall Blvd, Suite 204

Austin, TX 78752
nfennell@fairdefense.org
(512) 637-5222 (phone)
(512) 637-5224 (fax)

*Attorney for the Plaintiff*